## Beach et al. v. Hopperton's Ex'r et al.

June 14, 1946.

As Modified on Denial of Rehearing

November 8, 1946.

L. M. Ackman and E. H. Walton for appellants.

John L. Vest and O. M. Rogers for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

Margaret Hopperton died intestate on April 17, 1941, the owner of two parcels of real estate referred to in the record as No. 1 and No. 2. The former is a house

and lot located in the town of Walton, and the latter is a farm of 62 acres which is at the outskirts of the town. Mrs. Hopperton was survived by her husband, C. C. Hopperton, nine children and four grandchildren, three of the latter being infants over 14 years of age.

On Nov. 19, 1941, the husband, individually and as next friend of the infants and joined by one adult heir, brought this action against the other heirs asking the court to set aside the house and lot to him as his curtesy and then to sell it subject to his curtesy interest and to sell the farm as indivisible property and to divide the proceeds among the heirs. Answer and counter-claim was filed by his children and their spouses agreeing to the relief sought in the petition, except they objected to the house and lot being sold subject to their father's curtesy, averring that such would be detrimental to all parties, and they asked that it be set aside as curtesy to him and only the farm be sold. Subsequently an amended petition filed by the husband averred that he had abandoned the curtesy tract and asked that it be sold along with the other tract No. 2, and his curtesy paid him in cash. No service was had on the infant defendants on this amended petition.

On April 21, 1943, judgment was entered directing a sale of both parcels free from the husband's curtesy, and reciting that the husband was 78 years of age and should receive in cash 9.1% of the proceeds of the sale in lieu of his curtesy interest. The property sold for $7,200. The purchasers' exceptions to the report of sale were sustained on the ground that some of the parties were not before the court as to the sale of tract No. 1, the curtesy tract, and that the sale was void as to the infants, but only so much of the judgment as ordered the sale was set aside and all other parts of it were allowed to stand.

On Oct. 16, 1943, the husband died testate and his will named John L. Vest as executor. On Nov. 11, 1943, his children filed an amended answer, counterclaim and cross-petition, setting out the death of their father and averring that his interest in their mother's real estate had terminated with his death, and asking a sale of both parcels. The infants were properly made defendants in this pleading and were duly brought before the court,

and on Dec. 21, 1943, judgment was entered thereon directing a sale of both parcels of land and reciting that as the husband died on Oct. 16, 1943, "all his right, title and interest in and to the real estate of his wife, Margaret Hopperton, terminated." The motion of John L. Vest (the husband's executor) to be paid 9.1% of the proceeds of the sale had under this judgment in lieu of his decedent's curtesy interest was sustained and the master commissioner was directed to pay him $644.30. The heirs appealed.

Counsel argue that the question before us is, after the entry of a judgment ordering a sale of real estate free from curtesy or dower and fixing the percentage of the purchase price to be paid in lieu thereof, does the death of the spouse before the cash payment is received terminate his or her interest therein the same as death would terminate his curtesy or her dower interest in the land? However as we see it, that precise question is not presented. The question before us is whether or not the entire judgment of April 21 ,1943, was set aside when the chancellor sustained exceptions to the report of sale on the ground that the judgment was void as to the infants, or whether he could limit the order setting aside that judgment so that all parts of the judgment would stand except that portion directing a sale; also, whether or not the judgment of Dec. 21, 1943, reciting the husband's death on Oct. 16, 1943, terminated all of his right, title and interest in and to the real estate of his deceased wife was effective after the first judgment fixing his interest in the proceeds from the sale of his wife's property at 9.1% was set aside.

The judgment of April 21, 1943, was void as to the infants and the order setting it aside so recited. Therefore, there was no valid order directing a sale of the real estate free from the husband's right of curtesy and fixing his present cash value in lieu thereof. The necessary parties were not before the court on the amended petition of C. C. Hopperton, since it was filed without service being had on the infant defendants, and its prayer, as to both tracts No. 1 and No. 2, constituted a material departure from the prayer in the original petition. See Howard v. Singleton, 94 Ky. 336, 22 S. W. 337. Hence the chancellor was without authority to render a judgment and the one he did enter was therefore

void. The infants were as much affected by that part of the judgment which fixed the percentage the husband would take of the cash proceeds in lieu of curtesy as they were by the part which directed a sale of the real estate. When a judgment selling infants' real estate is declared to be void as to the infants because the necessary parties were not before the court, the entire judgment is void and the court may not exempt any part thereof from such declaration, as was attempted in this instance. Chapman v. Blackburn, 295 Ky. 606, 175 S. W. 2d 26; Soper v. Foster, 244 Ky. 658, 51 S. W. 2d 927; Lowther v. Moss, 239 Ky. 290, 39 S. W. 2d 501.

With the void judgment of April 21, 1943, out of the way, it is evident that the judgment of Dec. 21, 1943, became effective and it ordered a sale of the property and recited that the husband having died on Oct. 16, 1943, all of his interest in his wife's real estate terminated with his death. Had there been a valid judgment entered before the husband's death which ordered a sale of the real estate free from his curtesy interest and fixed the percentage he would receive from the proceeds of the sale in lieu of his curtesy, we could not say that his interest in the cash proceeds terminated with his death before he received payment, as we are not in accord with appellants' contention that the husband had to survive a sale of the land in order to obtain the cash value of his right of curtesy.

The right of quarantine is the privilege given a widow to use certain portions of the husband's estate until dower is allotted. 17 Am. Jur. Sec. 105, p. 762. In this State KRS 392.050 definitely fixes the widow's right of quarantine and under KRS 392.010 the husband's interest in the wife's realty is the same as her interest in his, therefore 392.050 applies to the husband. In Wyly v. Kallenbach, 256 Ky. 391, 76 S. W. 2d 34, appears a history of the right of quarantine and of our statute covering it, and the distinction between dower and quarantine is made clear. The wife or husband has no estate in the lands of the deceased spouse until the dower or curtesy has been admeasured and assigned—until then the right is only one of quarantine and is not a vested interest which may be assigned to a stranger to the title. Consolidation Coal Co. v. Grayson, 186 Ky. 314, 216 S. W. 848.

Section 495 of the Civil Code of Practice is to the effect that the court may with or without the consent of the widow order the sale of land in which she has a dower interest free from her right of dower and provides that she shall receive cash in lieu of having dower allotted in the land. In construing this section in Vanderpool's Heirs v. Vanderpool's Heirs, 171 Ky. 381, 188 S. W. 461, we wrote that the section did not require the order of sale to set out that the land was sold free from dower or to recite the percentage of the sale price the widow was to receive, since the court could subsequently enter such orders as may be necessary to protect the widow's right. In Berger v. Berger, 264 Ky. 225, 94 S. W. 2d 618, it was said that if a mistake were made in the judgment as to the widow's age, the error could be corrected in the order of distribution; and in Trimble v. Kentucky River Coal Corp., 235 Ky. 301, 31 S. W. 2d 367, we held that the cash value is based upon the widow's age, not at the time of her husband's death, but at the time the property is sold.

In the instant case had there been a valid order directing a sale free from curtesy, or one fixing the present cash value of the husband's curtesy, that would have been equivalent to converting his curtesy interest into cash and his death before he received payment, or even before the land was sold, would not have terminated his interest in the cash because it would have vested in him from the moment the order was entered. The basis for this is that such order shows the termination of the quarantine and that the curtesy in the wife's real estate had been surrendered and that cash had been accepted in lieu thereof. 17 Am. Jur., Dower, Sec. 54, p. 709.

The effect of the death of a spouse prior to the receipt by him or her of cash agreed to be accepted in lieu of curtesy or dower seems never to have been passed upon by this court, and from the paucity of authority on the subject it appears the question has rarely been presented for determination. See annotations in Ann. Cas. 1914D, 554. However, the conclusions we have reached are supported by the few authorities cited in briefs and the one or two our limited research has found.

In Robinson v. Govers, 138 N. Y. 425, 34 N. E. 209,

210, 514, the widow brought suit to recover her dower and filed in the action her consent to accept a gross sum in lieu of dower. A report had been filed fixing the amount she was to receive, but she died before the confirmation of the report. The court in holding that her death should not defeat her right to the money said: "The plaintiff had consented to receive it; the defendants, by their motion to the court, had expressed their willingness to pay it, and nothing remained to be done except to ascertain the amount or the exact sum which would represent the value of the plaintiff's interest. This involved an inquiry as to little more than two facts, namely, the plaintiff's age, and the value of the whole property. The referee's report fixed the sum to which the plaintiff was entitled. True, it was not operative or final until confirmed. But it was confirmed. The necessary judicial action to accomplish that result was had. The decision was expressed in writing, and it had all the certainty of a formal judgment. The formal order entered is but the evidence of the decision or judgment, and not the decision itself, which must always precede the entry of the order. The entry of a formal order may have been necessary for the enforcement of the right, but the right itself—that is to say the plaintiff's right to demand and receive a certain sum of money in lieu of dower from the defendants or from the land—was established and declared when the court delivered its decision of the questions before it in writing."

To the same effect as the Robinson opinion is the decision in Fulton v. Fulton, 8 Abb. N. C., N. Y., 210. In Mulford v. Hiers, 13 N. J. Eq. 13, the widow agreed to accept a gross sum (which was to be fixed by the chancellor) in lieu of dower. Some of the land was sold before her death and some thereafter. It was held that as to the land sold during her lifetime, her estate was entitled to the cash she had agreed to accept in lieu of dower, but as to the land sold after her death she was not so entitled. The court in reference to the land sold before her death said: "The right of the widow to receive such equivalent becomes vested upon her filing her consent to accept it. She is bound, by her consent, to such acceptance, and it is just that the obligation should be mutual. The right vested in the widow to receive a sum in gross for her estate cannot be divested by her death."

McLaughlin v. McLaughlin, 22 N. J. Eq. 505, followed the Mulford opinion and held that the widow by signing an agreement after the sale of the premises to accept cash in lieu of dower took a vested interest in the cash and her death before its payment did not divest her of the right to receive the money.

It appears to us that the distinction the Mulford opinion makes between lands sold in the widow's lifetime and those sold after her death is not logical in view of the above quotation from that opinion. It strikes us that the right of the widow to receive the cash equivalent of her dower becomes vested upon her filing her consent to accept it or upon the court ordering the land sold free from dower and fixing the cash equivalent thereof.

Sims v. Yerkes, 239 Pa. 595, 87 A. 56, Ann Cas. 1914D, 552, is not in accord with our views. It was there held that an agreement of the widow to bring suit to have dower assigned with a provision therein that she was to accept the gross sum to be determined by certain mortality tables does not constitute a surrender of her right of dower, but expressly retains it, and her death before her dower is admeasured terminates her right of dower and her executors are not entitled to the cash she would have received had she lived. We think the sounder view is that the agreement to accept cash in lieu of dower amounts to a surrender of the right of dower, or rather converts it into cash which at that moment vests in the widow, and her death before the payment does not divest her of the right to receive the money.

While not directly in point here, in Georgetown Nat. Bank v. Ford, 215 Ky. 472, 285 S. W. 218, 82 A. L. R. 1495, this court held that a widow who executed on Oct. 26, 1923, a renunciation of her husband's will in conformity with KS Sec. 1404, now KRS 392.080, but which was not delivered to the county clerk's office until the day following her death on Dec. 13, 1923, was effective. Her right to renounce the will had been exercised when she executed the paper according to statute. The fact that it was not delivered to the recording office until after her death did not affect her renunciation.

The judgment is reversed because there was no valid order entered before the death of the husband directing

a sale of the real estate free from his right of curtesy, or fixing the cash equivalent thereof, and a judgment will be entered in conformity with this opinion.

The judgment is reversed.